IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No.: 22-CR-403 |
| | : | |
| v. | : | 18 U.S.C. § 111(a)(1) and (b) (Assaulting, |
| | : | Resisting, or Impeding Certain Officers |
| | : | Using a Dangerous Weapon) |
| **DALE HUTTLE,** | : | |
| | : | |
| **Defendant.** | : | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Dale Huttle, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote

1

count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted

those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7.    Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8.    The defendant traveled to Washington, D.C. from Crown Point, Indiana to attend the "Stop the Steal" rally for former President Donald Trump.

9.    After attending the rally, the defendant joined the crowd and marched to the U.S. Capitol. The defendant carried a long flagpole with an upside-down American flag attached. As he marched towards the Capitol with his nephew/co-defendant, Matthew Huttle, Matthew Huttle said, "we're going to see if we can get inside." As they got closer to Capitol grounds, Matthew Huttle said, "we're going to be stopped here, I don't think we're going to get close. We're going to have to go up the side . . . . Cops, a lot of cops." The defendant responded, "I think we ought to bum rush the Capitol building. Arrest them all. We've got enough people to do that."

10. By 2:00 PM, the defendant made it to Capitol grounds. He stood with the mass of rioters on the West Plaza. Co-defendant Matthew Huttle used his cell phone to record the chaos around him. In his video, he acknowledged the presence of tear gas in the air. Rioters around him chanted "USA USA USA!" As the defendant and his co-defendant faced the Capitol building, Matthew Huttle said, "some people just stormed it," and other rioters yelled "Breach it!"

11. The defendant and his co-defendant continued marching closer to the Capitol building and they eventually approached a police line. The defendant and other rioters yelled at and berated officers who were protecting the Capitol, saying things like, "You guys need to be patriots! Be Americans! Your country is being stolen!" and "You can't stop a million of us! We're taking this house, just so you know," and "didn't you take an oath? You're serving the enemy," and "how will you be able to sleep tonight?" and "Congress is a bunch of traitors at this point they stole our country from us!" As rioters continued to confront the line of officers, officers attempted to disperse the crowd using munitions. Matthew Huttle said, "they're getting gassed."

12. The defendant and his co-defendant approached a line of officers standing in front of bike rack barriers on the West Front. Rioters grabbed at the bike rack barriers, attempting to disassemble the line. As rioters pulled bike racks toward them, officers attempted to maintain hold of the bike racks. During this struggle, the defendant stood at the front of the pack of rioters wielding his flagpole.

13. Once the rioters successfully pulled away a bike rack, the defendant lunged forward towards the officers and forcibly jabbed his flagpole directly into Officer A.D., making physical contact by hitting the officer in the stomach. As Officer A.D. was jabbed in the stomach with the flagpole, the officer lost his footing and fell backwards on stairs while still being struck with the flagpole. The government's evidence is that the defendant's assault on Officer A.D. caused serious

bodily injury. When the officer fell, he felt a sharp pain in his back and upper leg. As a result of this assault, Officer A.D. slipped a disc in his back. The officer suffers continued back pain and requires consistent medical treatment for his back. The defendant does not dispute this evidence.

14. During the same incident, another officer – MPD Officer E.F. – was knocked to the ground as rioters pulled away the bike racks. As other officers attempted to pull Officer E.F. to his feet, the defendant forcibly jabbed his flagpole into and struck MPD Officer E.F. The defendant's flagpole made physical contact with Officer E.F.

15. After these assaults, the defendant remained at the front of the police line and berated and taunted police officers. He yelled things like:

- "Be patriots, be Americans! Your country is being stolen"
- "Look all the way back there, there's a million of us, you think you can stop us? You can't, you might as well just back off."
- "You're going to lose your country over this bullshit. Stop the [indecipherable] and let us do what we need to do. You can't stop a million of us."
- "It's going to get real ugly if you don't let us in man, it's going to get real ugly. We're coming in. We're coming in, okay. We don't want to hurt you guys, just step aside."
- "We're going to rush those mother fuckers in there!"
- "Congress is a bunch of traitors at this point, they stole our country from us."
- "You're already breached, just let us in."
- "It's going to get bad."
- "We're going to push you all forward in a minute"

16. The rioters then collectively broke through police line, and officers started to retreat. The officers were stuck between the mob and a wall of the Capitol building. The officers began retreating up a narrow temporary staircase. However, before all the officers could retreat up the staircase, the defendant approached Officer B.P. The defendant reached for Officer B.P.'s gas mask. The defendant then physically grabbed Officer B.P.'s baton and attempted to yank it away from the officer. The defendant yelled "SURRENDER!"

17. After the defendant was arrested, he gave a news media interview. In that interview, he said, "I'm not ashamed of being there. It was our duty as patriots" and "I am the ultimate patriot because I put myself on the line to defend the country. And I have, I have no regrets. I will not say I'm sorry."

### *Elements of the Offense*

18. The parties agree that 18 U.S.C. §§ 111(a)(1) and (b) requires the following elements:

   a. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Officer A.D., an officer from the Metropolitan Police Department.

   b. Second, the defendant did such acts forcibly.

   c. Third, the defendant did such acts voluntarily and intentionally.

   d. Fourth, Officer A.D. was an officer or an employee of the United States who or a person who was assisting officers of the United States who was then engaged in the performance of their official duties

   e. Fifth, in doing such acts, the defendant intentionally used a deadly or dangerous weapon or inflicted bodily injury.

### *Defendant's Acknowledgments*

The defendant DALE HUTTLE knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of their official duties. Specifically, the defendant admits that he intentionally struck MPD Officer A.D. with a flagpole while Officer A.D. was assisting the United States Capitol Police. The defendant admits that the flagpole constitutes a deadly or

dangerous weapon and that his assault with the flagpole against Officer A.D. inflicted serious bodily injury. The defendant further admits that he knew at that time of the assault of the officer that the officer was engaged in the performance of their official duties or that he assaulted the officer on account of their performance of their official duties.

        Respectfully submitted,

        MATTHEW M. GRAVES  
        United States Attorney  
        D.C. Bar No. 481052

By:    /s/ Ashley Akers  
        Ashley Akers  
        Trial Attorney  
        MO Bar No. 69601  
        Capitol Siege Section  
        U.S. Attorney's Office  
        District of Columbia  
        Phone: 202-353-0521  
        Email: Ashley.Akers@usdoj.gov

**DEFENDANT'S ACKNOWLEDGMENT**

I, Dale Huttle, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 11-29-2023         *[signature]*
                         Dale Huttle
                         Defendant

**ATTORNEY'S ACKNOWLEDGMENT**

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 12/5/2023          *Michelle Peterson*
                         Michelle Peterson
                         Attorney for Defendant